UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ELIZABETH W. HEARN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CV-00-PT-1731-E |
| | ) | |
| CENTRAL STATES, SOUTHEAST | ) | |
| AND SOUTHWEST AREAS | ) | |
| PENSION PLAN, | ) | |
| | ) | |
| Defendant. | | |

MEMORANDUM OPINION

This cause comes to be heard upon defendant Central States, Southeast and Southwest Areas Pension Plan's ("the defendant") Motion for Summary Judgment, filed on December 26, 2000.

UNDISPUTED FACTS

Virtually all of the pertinent facts in this case are undisputed. Elizabeth Hearn ("the plaintiff") worked for United Parcel Service ("UPS") from 1991 to 1998. She suffered an on-the-job injury in February, 1997. The Social Security Administration ("SSA") determined that the plaintiff was totally disabled on February 26, 1997. She began to receive Social Security Disability benefits six months later, in August 1997. The plaintiff also applied for monthly disability benefits from the defendant in March, 1997. In the application, she stated that the date that she became totally disabled was March 7, 1997. Because the defendant accepts a total disability award from the SSA as evidence of an applicant's disability, the defendant adopted the SSA's determination of the date of disability.

1



The defendant is a not-for-profit Taft-Hartley Trust pension fund that is regulated by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*. The defendant provides retirement benefits to employees who work in the Teamster Industry, pursuant to collective bargaining agreements with their employers. These agreements require the employers to make contributions to the defendant on their employees' behalf. The pension fund covers almost 400,000 participants and retirees. The defendant stresses that it is not an insurance company. It has no shareholders and earns no profits.

The trust agreement grants the defendant's trustees discretionary power and authority to administer the fund and to promulgate any binding rules and regulations that they consider to be necessary. Under the trust agreement, only the trustees have power to construe the provisions of the trust agreement and any documents relating to the plan. The trustees have the power to resolve all questions or controversies, arising between any parties, in connection with the trust agreement. They have the final authority to make decisions upon claims for benefits by participants.

While the plaintiff was employed with UPS, the highest contribution rate specified in the contract between her Union Local and UPS was at the Class 17 level. The level of contribution dictated the amount of monthly benefits that a disabled employee would receive. Prior to August 1, 1997, UPS's Class 17 contribution level translated into $265.00 in monthly disability benefits for disabled plan participants at the plaintiff's age. As new contracts are signed, however, class levels and benefits often increase. Pursuant to a new collective bargaining agreement between the Teamsters and UPS, effective on August 1, 1997, UPS's maximum contribution rate became Class 18. The new contribution rate level raised the monthly disability benefit payments to plan participants of the plaintiff's age from $265.00 to $800.00.

2

A number of documents describing the plan exist. The plan itself was amended to state that "the amount of the Monthly Disability Benefit of a Participant whose benefit Class is 18 <u>on the date on which he becomes disabled</u>, based upon his [age at disability] on that date shall be . . . $800.00" (emphasis added). A pamphlet sent to UPS employees entitled "Benefits Package for the UPS Teamster" stated that the effective date of the Class 18 employee level was August 1, 1997. Finally, a third document, sent to plan members, entitled "Summary Benefit Plan Description" ("SPD"), is published under an ERISA provision, 29 U.S.C. § 1022. The document is meant to be the employee's primary source of information concerning his or her benefits, and at least one court has held that employees are entitled to rely upon the descriptions of the provisions contained therein. <u>Branch v. G. Bernd Co.</u>, 764 F. Supp. 1527, 1538 (M.D. Ga. 1991). The interpretation of certain terms and provisions in the SPD form the bulk of this case; they will be discussed later in this opinion.

## PROCEDURAL HISTORY

When the plaintiff discovered the increase in UPS's benefit class level and the corresponding increase in monthly disability benefits, she re-applied for the monthly benefits, again stating that her date of disability was March 7, 1997. After reviewing the application and the plaintiff's employment history, the defendant denied the plaintiff's request for increased benefits because her date of disability arose prior to the effective date of the new class level. Because she was not a Class 18 employee on the date that she became disabled, the defendant concluded that she did not qualify for the benefits. The plaintiff appealed the determination, arguing that the fact that UPS continued to pay contributions to the fund on her behalf until February 1998 qualified her for the higher disability payments, even though she became disabled in late February/early March of 1997. Her appeal was denied on the grounds that the date of her

3

disability was too early for her to qualify for the new class level. The plaintiff then appealed to both the defendant's Benefits Claim Review Committee on March 25, 1999, and the Benefits Claim Appeals Committee on June 24, 1999. Both bodies denied her appeal for the same reason that her claim was denied: her date of disability. On April 27, 1999, the plaintiff appealed the determination to the board of trustees in the final step of the administrative appeals process. She argued that the fact that she was still employed by UPS on August 1, 1997, and did not resign until June 1998 qualified her for benefits under the new class level. She also argued that she was really not totally disabled until March 1998. The trustees reviewed the appeal and denied the increased benefits because of the date of the plaintiff's disability. The plaintiff filed this action on June 23, 2000.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment is to be granted if there is no genuine issue of material fact. United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. The evidence of the non-moving party is to be believed, and the court is not to attempt to perform jury functions such as credibility determinations. Id. After considering everything in the record, all permissible inferences are to be drawn in favor of the non-moving party. Clinkscales v. Chevron USA, Inc., 831 F.2d 1565, 1570 (11th Cir. 1987).

When the non-moving party has the burden of proof at trial, it must come forward with sufficient evidence on each element that must be proved. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). If the evidence is merely colorable or is not significantly probative, summary judgment may be proper. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986). Summary judgment is appropriate if on any

4

element there would be insufficient evidence to require submission of the case to a jury. Earley, 907 F.2d at 1080. "The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such circumstances, there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 327 106 S. Ct. 2548, 2555 (1986).

## ARGUMENT

The defendant argues that because the plan is regulated by ERISA, a review of the trustees' decision to deny the plaintiff increased benefits must be made pursuant to the arbitrary and capricious standard, and that their decisions cannot be overturned unless they constitute an abuse of discretion, citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). In Firestone, the high Court also noted that, under a trust agreement, the power given to the trustees to do all acts necessary and proper to administer the trust carries great weight. Id. at 111. The defendant cites to Paramore v. Delta Airlines, Inc., 129 F.3d 1446, 1450-1451 (11th Cir. 1997) and Sharron v. Amalgamated Insurance Agency Services, Inc., 704 F.2d 562, 563 (11th Cir. 1983) as further support that the ERISA arbitrary and capricious standard governs a court's review of a trustee's discretionary decisions in fact-finding and provision construction. Under Eleventh Circuit case law, the reviewing court must determine whether there was a reasonable basis for the trustees' decision to deny benefits, based upon the facts known to the trustee at the time they made their decision. Brown v. Blue Cross & Blue Shield of Alabama, Inc., 898 F.2d 1556, 1559 (11th Cir. 1990). For self-insured employee benefits plans, such as the defendant, if

5

the trustees have no "conflict of interest," the examination of the challenged decision is somewhat more relaxed: the court cannot reverse the discretionary decision of the trustees unless it is "completely unreasonable." Id. at 1564. The defendant argues that it qualifies for this relaxed arbitrary and capricious evaluation because it is a not-for-profit trust fund, as opposed to a for-profit insurance company, a fact that the Eleventh Circuit has found to indicate the absence of a conflict of interest. Id. at 1567-1568.

The defendant next notes that the Plaintiff has the burden to prove entitlement to benefits under the plan, and that the plan cannot allow payments to persons that are ineligible under its provisions, citing Oldenburger v. Centeral States, Southeast & Southwest Areas Teamster Pension Fund, 934 F.2d 171, 174 (8th Cir. 1991) and Donovan v. Daugherty, 550 F. Supp. 390, 410 (S.D. Ala. 1982). The defendant argues that the plaintiff has not shown that she is entitled to the increased benefits because her date of disability clearly makes her ineligible. The plaintiff contends that she has shown that, pursuant to the plan's provisions, she *is* eligible for the benefits, and asserts that the defendant's construction of those provisions is not only erroneous, arbitrary, and capricious, but also wilful and wanton. Both the plaintiff and the defendant agree that the sole issue in this case is the plaintiff's eligibility for the benefits, as determined by the date of her disability.

The defendant maintains that the date of the plaintiff's disability was either the date that she listed on her applications for benefits, March 7, 1997, or the date that the SSA determined that she was disabled, February 26, 1997. The plaintiff argues that in reality, she was not disabled for classification purposes until after August 1, 1997, because of the definition of the term "eligibility" in the following SPD provisions:

> "Generally we'll consider you totally and permanently disabled if you're

6

> eligible to receive disability benefits from Social Security. We *may* also consider you totally and permanently disabled (even though you're not eligible for disability benefits from Social Security) if you can provide us with medical evidence that confirms that you are *totally* and *permanently* disabled."

SPD, "Exit 5," p. 14, exhibit A to Supplemental Affidavit of Alfred E. Nelson. (emphasis in original). Later,

> "The amount of your Monthly Disability Benefit is determined by your age and your Benefit Class <u>as of the date of your disability</u>."

Id. Later,

> "If you qualify for a Monthly Disability Benefit, your payments will begin on the first day of the 6th month following the month of your disability."

Id. at p. 15. The plaintiff, however, argues that the SPD that she possesses states the above paragraph in the following fashion:

> "If you're to receive a Monthly Disability Benefit, you'll become eligible to have your payments begin on the first day of the 6th month following the month of your disability."

The plaintiff claims that the above language was attached as "Exhibit A" to the plaintiff's Motion in Opposition to Summary Judgment. This court did not find exhibits attached to either copy of the motion provided by the plaintiff. Nevertheless, it will not be difficult for this court to reach its conclusion, even assuming that the plaintiff's version of the provision was controlling at the time she claimed her benefits.

The plaintiff argues that the trustees construed the term "eligible," as used in the first paragraph, *supra*, and as used in the plaintiff's version of the last paragraph, *supra*, in two different ways. The plaintiff argues that the phrase "eligible to receive benefits from Social Security" does not implicate the date of qualifying disability, but rather the actual time that the SSA begins to make the payments. The SSA benefits system is much like the defendant's

7

benefits system in that benefits payments begin six months after the initial determination of qualification. Therefore, the plaintiff argues, because she was not really "eligible" to receive benefits from Social Security until six months after she was found to be disabled, under the plain language of the SPD, the defendant did not really consider her to be disabled until six months after the SSA's determination that she was totally disabled. This date would be, at the earliest, August 26, 1997.

The plaintiff argues that the defendant's language in her version of the last paragraph, *supra*, supports her interpretation of the definition of "eligible." She argues that the statement "If you're to receive a Monthly Benefit, you'll be eligible to have your payments begin on the first day of the 6th month following the month of your disability." means that an employee is not eligible for the monthly benefit <u>at all</u> until six months after the date of disability.

The plaintiff claims that, in denying her the increased benefits, the trustees applied two different definitions of the word "eligible" in the context of receiving benefits. Since, she argues, "eligibility," as used in the last paragraph is defined as "disability-plus-six-months," and since the two benefits systems are so similar, "eligibility," as used in the first paragraph should mean "disability-plus-six-months" as well, instead of simply the determination of disability itself. The plaintiff characterizes the trustees' interpretation of the words "eligibility" as "convenient," "wilful" and "wonton."

## DISCUSSION

The plaintiff's linguistic gymnastics ignore the plain language of even her version of the SPD's provisions. The plaintiff's version of the last sentence begins: "If you're to receive a Monthly Benefit. . . ." This statement assumes eligibility to receive the benefit itself. The sentence concludes with: "you'll be eligible to have your payments begin on the first day of the

6th month following the month of your disability." This part of the sentence discusses <u>when</u>, not <u>whether</u> the benefits will be received. The first sentence reads "Generally, we'll consider you totally . . . disabled if you're eligible to receive benefits from Social Security." Again, the most logical reading of this sentence implicates the eligibility to receive the benefits <u>at all</u>, not the <u>time</u> that the benefits are to begin arriving in tangible form. The plaintiff's interpretation of these sentences would have a term of art read into a document that even the plaintiff admits is to be read, understood, and relied upon by a layperson.

## CONCLUSION

The court concludes that the defendant's decision was not unreasonable, arbitrary or capricious. The defendant's motion will be Granted.

This 9th day of February, 2001,

*/s/ Robert B. Propst*
ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE